** PART II **
II. EMPLOYMENT OF RACING OFFICIALS
RECENTLY, SOME RACETRACK OWNERS HAVE TAKEN THE POSITION THAT THE RACETRACKS, AND NOT THE COMMISSION, ARE TO HIRE ALL RACING OFFICIALS, EXCEPT STEWARDS. IN TAKING THIS POSITION, THE TRACKS RELY ON THE LANGUAGE OF 3A O.S. 203.4, SPECIFICALLY THE LANGUAGE THAT PROVIDES THAT THE COMMISSION SHALL EMPLOY THREE STEWARDS AT EACH RACE MEETING, AND THE LANGUAGE THAT ALL OTHER RACING OFFICIALS AT A RACING MEET SHALL BE APPROVED BY THE COMMISSION. THIS ARGUMENT IS BASED UPON A PERCEIVED TECHNICAL DIFFERENCE BETWEEN THE WORDS EMPLOY AND APPROVED. BUT, AS THE CALIFORNIA COURT OF APPEALS NOTED IN FIRST FEDERAL SAV. L. ASS'N V. STATE BOARD OF CONTROL, 128 P.2D 75, 79 (CAL. APP. 1942), THE WORD APPROVED HAS NO TECHNICAL MEANING. INDEED, REFERENCE TO WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, SPRINGFIELD, MASS., 1981, DEMONSTRATES THAT THE WORD APPROVE HAS MANY MEANINGS INCLUDING EXPRESSING A FAVORABLE OPINION OR JUDGMENT OF, TO VOTE INTO EFFECT, AND TO APPROPRIATE FOR ONE'S OWN BENEFIT. IF THERE WERE ANY DOUBT AS TO WHETHER THE LEGISLATURE INTENDED A TECHNICAL MEANING TO BE GIVEN THE WORD APPROVED, THE LEGISLATURE'S RECENT INCREASE IN THE NUMBER OF AUTHORIZED COMMISSION EMPLOYEES, (IN THE WAKE OF THE COMMISSION NO LONGER BEING ABLE TO APPROVE RACING OFFICIALS BY ENTERING INTO INDEPENDENT CONTRACT RELATIONSHIPS), RESOLVED THAT DOUBT.
BOTH THE UNITED STATES SUPREME COURT AND THE OKLAHOMA SUPREME COURT HAVE LONG RECOGNIZED THAT THE MEANING OF A STATUTE MAY BE DETERMINED BY REFERRING TO THE CONTEMPORARY CIRCUMSTANCES EXISTING AT THE TIME OF THE ACTS PASSAGE. E.G. UNITED STATES V. CHAMPLIN REF. CO., 341 U.S. 290,297 (1950), AND SHERIDAN OIL CO. V. SUPERIOR COURT OF CREEK COUNTY, 82 P.2D 832, 834 (OKLA. 1938). INDEED, THE UNITED STATES SUPREME COURT HAS NOTED THAT A STATUTE CANNOT BE DIVORCED FROM THE CIRCUMSTANCES EXISTING AT THE TIME IT WAS PASSED. 341 U.S. AT 297. THUS, THE CONTEMPORARY CIRCUMSTANCES, OUTLINED ABOVE, RELATING TO THE LEGISLATURE'S RESPONSE TO THE FEDERAL AGENCIES' RULINGS THAT THE RACING COMMISSION COULD NO LONGER TREAT RACING OFFICIALS AS INDEPENDENT CONTRACTORS, ARE PROPERLY CONSIDERED. GIVEN THESE CIRCUMSTANCES, IT IS CLEAR THAT THE LEGISLATURE, IN NEARLY QUADRUPLING THE NUMBER OF COMMISSION FULL-TIME EQUIVALENT EMPLOYEES, INTENDED THAT THE LISTED RACING OFFICIALS BE EMPLOYEES OF THE COMMISSION, AND NOT EMPLOYEES OF THE RACETRACKS. IF IT HAD BEEN THE LEGISLATURE'S INTENT THAT THESE RACING OFFICIALS BE TRACK EMPLOYEES, THERE WOULD HAVE BEEN NO NEED TO NEARLY QUADRUPLE THE NUMBER OF AUTHORIZED COMMISSION EMPLOYEES.
THIS CONCLUSION IS FURTHER SUPPORTED BY THE RACING COMMISSION'S LONG-STANDING AND CONTINUAL INTERPRETATION OF 3A O.S. 203.4 (1990), AS NOT AUTHORIZING RACETRACKS TO EMPLOY THESE RACING OFFICIALS. THIS LONG-STANDING, CONTINUAL CONSTRUCTION BY THE COMMISSION, UNDER OKLAHOMA LAW, IS TO BE GIVEN GREAT WEIGHT IN INTERPRETING THE STATUTE. E.G., UNITED AIRLINES INC. V. STATE BD. OF EQUALIZATION, 789 P.2D 1305, 1311-1312 (OKLA. 1990). MOREOVER, AS THE OKLAHOMA SUPREME COURT HAS FURTHER HELD, WHERE THE LEGISLATURE HAS CONVENED MANY TIMES DURING THE PERIOD IN WHICH AN ADMINISTRATIVE AGENCY HAS CONSTRUED A STATUTE, AND WHERE THE LEGISLATURE HAS NOT EXPRESSED ITS DISAPPROVAL OF THE STATUTES CONSTRUCTION, THE LEGISLATURE'S SILENCE MAY BE REGARDED AS AN ACQUIESCENCE IN OR AN APPROVAL OF THE AGENCY'S CONSTRUCTION. ID.
THE CONCLUSION THAT IT IS THE INTENT OF THE LEGISLATURE THAT THE INVOLVED RACING OFFICIALS, OFFICIATING AT RACETRACKS, NOT BE EMPLOYEES OF THE RACETRACKS, BUT RATHER ARE TO BE EMPLOYEES OF THE RACING COMMISSION, IS ALSO SUPPORTED BY THE INTENT AND PURPOSE OF THE OKLAHOMA HORSE RACING ACT, (ACT), 3A O.S. 200 (1990) ET SEQ. AT 3A O.S. 203.7 (1990), THE LEGISLATURE ESTABLISHED THE PURPOSE OF THE OKLAHOMA HORSE RACING ACT, THE LEGISLATURE PROVIDING, IN PERTINENT PART, THAT:
 "IN THE INTEREST OF THE PUBLIC HEALTH, SAFETY, AND WELFARE, IT IS HEREBY DECLARED TO BE THE PURPOSE AND INTENT OF THE OKLAHOMA HORSE RACING ACT TO VEST IN THE COMMISSION PLENARY POWER TO PROMULGATE RULES AND REGULATIONS FOR THE FORCEFUL CONTROL OF RACE MEETINGS HELD IN THIS STATE. THE RULES AND REGULATIONS SHALL:
 2. MAINTAIN RACE MEETINGS HELD IN THIS STATE OF THE HIGHEST QUALITY AND FREE OF ANY HORSE RACING PRACTICES WHICH ARE CORRUPT, INCOMPETENT, DISHONEST, OR UNPRINCIPLED; AND
 3. DISSIPATE ANY CLOUD OF ASSOCIATION WITH THE UNDESIRABLE AND MAINTAIN THE APPEARANCE AS WELL AS THE FACT OF COMPLETE HONESTY AND INTEGRITY OF HORSE RACING IN THIS STATE."
ADDITIONALLY, UNDER THE PROVISIONS OF 3A O.S. 204 (1990) THE COMMISSION IS REQUIRED TO HAVE SUPERVISION OF ALL RACE MEETINGS HELD IN THIS STATE, IS EMPOWERED TO ADMINISTER AND ENFORCE THE PROVISIONS OF THE ACT, AND EMPOWERED TO ADJUDICATE CONTROVERSIES ARISING FROM ENFORCEMENT OF THE PROVISIONS OF THE ACT.
INTERPRETING 3A O.S. 203.4 TO REQUIRE THAT THE INVOLVED RACING OFFICIALS BE HIRED BY THE VERY ENTITIES BEING REGULATED, IS CONTRARY TO INTENT AND PURPOSE OF THE ACT. HAVING THE REGULATORS — THE RACING OFFICIAL — HIRED BY AND ANSWERABLE TO THOSE WHO ARE TO BE REGULATED CAN HARDLY BEEN AS AN APPROPRIATE METHOD OF AVOIDING HORSE RACING PRACTICES THAT ARE CORRUPT AND DISHONEST, NOR AS AN APPROPRIATE WAY OF MAINTAINING THE APPEARANCE AS WELL AS THE FACT OF COMPLETE HONESTY AND INTEGRITY IN RACING.
UNDER THE RACETRACKS' INTERPRETATION OF THE STATUTE, IT WOULD BE THE RACETRACKS THAT WOULD HIRE ALL RACING OFFICIALS, EXCEPT STEWARDS; IT WOULD BE THE RACETRACKS THAT WOULD SET THE RACING OFFICIALS' SALARIES, ESTABLISH THEIR BENEFITS, AND TERMINATE THEIR EMPLOYMENT. IN SHORT, THE RACETRACKS' INTERPRETATION OF THE STATUTE WOULD HAVE THE RACING OFFICIALS ANSWERABLE TO THOSE BEING REGULATED. UNDER THE RACETRACKS' INTERPRETATION OF THE STATUTE, THOSE WHO IDENTIFY THE HORSES, DO THE DRUG TESTING AND PERFORM THE VARIOUS OTHER DUTIES OF OFFICIATING THE RUNNING OF THE RACES WOULD BE MORE ANSWERABLE AND DEPENDENT UPON THE RACETRACKS, THAN ON THE COMMISSION. SUCH AN INTERPRETATION IS FAR LESS CONSISTENT WITH THE SPIRIT AND INTENT OF THE ACT, THAN THE INTERPRETATION THAT THE INVOLVED RACING OFFICIALS ARE TO BE EMPLOYED BY THE COMMISSION.
FOR THE ABOVE STATED REASONS, I CONCLUDE THAT IT IS THE INTENTION OF THE LEGISLATURE THAT STEWARDS, OFFICIAL TRACK VETERINARIANS, HORSE IDENTIFIERS, TEST BARN ASSISTANTS AND TEST BARN ESCORTS, OFFICIATING AT RACE MEETS, ARE TO BE EMPLOYED BY THE COMMISSION, NOT BY THE RACETRACKS THAT ARE BEING REGULATED.
III. IN YOUR SECOND QUESTION YOU INQUIRE WHETHER IT IS THE INTENTION OF THE LEGISLATURE THAT RACETRACKS ONLY BE RESPONSIBLE FOR PAYING 60% OF THE COMPENSATION OF THE RACING OFFICIALS LISTED ABOVE. PUT ANOTHER WAY, THE QUESTION IS WHETHER IT IS THE INTENT OF THE LEGISLATURE THAT THE TAX PAYERS, THROUGH THE COMMISSION, BE RESPONSIBLE FOR PAYING 40% OF THE COMPENSATION OF THESE RACING OFFICIALS, OFFICIATING AT OKLAHOMA RACETRACKS.
AS NOTED ABOVE, THE STATUTORY PROVISIONS OF 3A O.S. 203.4 SPECIFICALLY PROVIDE THAT THE COMPENSATION OF THE STEWARD SHALL BE PAID BY THE COMMISSION AND SAID COST SHALL BE REIMBURSED BY THE ORGANIZATION LICENSEE (RACETRACK). OTHER RACING OFFICIALS, UNDER THE STATUTE, SHALL BE APPROVED BY THE COMMISSION AND COMPENSATED BY THE ORGANIZATION LICENSEE (RACETRACK). A READING OF THESE STATUTORY PROVISIONS MAKES IT CLEAR THAT IT WAS THE INTENT OF THE LEGISLATURE THAT RACETRACKS BE RESPONSIBLE FOR COMPENSATING ALL THESE RACING OFFICIALS. HOWEVER, AS NOTED ABOVE, RECENT ACTION BY THE LEGISLATURE HAS CAUSED RACETRACKS TO QUESTION WHETHER THEY ARE ANY LONGER TO BE RESPONSIBLE FOR FULLY COMPENSATING THESE RACING OFFICIALS.
THE LANGUAGE CALLING THE INTERPRETATION OF THE STATUTE INTO QUESTION, AS NOTED ABOVE, IS CONTAINED IN SECTION 60 OF CHAPTER 266 OF THE 1990 OKLAHOMA SESSION LAWS, THE PERTINENT LANGUAGE READING:
 "IT IS THE INTENT OF THE LEGISLATURE THAT THE HORSE RACING COMMISSION RECOVER SIXTY PERCENT (60%) OF THE COST OF THE PERMANENT/PART-TIME EMPLOYEES FROM THE RACETRACKS WHICH USE THE EMPLOYEES."
AS NOTED ABOVE, IN THE PAST, APPROXIMATELY 60% OF THE COMMISSION EXPENDITURES NECESSARY TO PAY COMMISSION EMPLOYEES AT RACETRACKS WENT TO COMPENSATE THE ABOVE LISTED RACING OFFICIALS, WITH THE OTHER 40% GOING TO COMPENSATE LICENSE CLERKS. AS YOU KNOW, IN THE PAST, THE COMMISSION HAS BEEN TOTALLY RESPONSIBLE FOR COMPENSATING LICENSE CLERKS. GIVEN THESE CONTEMPORARY CIRCUMSTANCES, THE LANGUAGE OF SECTION 60, QUOTED ABOVE, IS SUSCEPTIBLE TO TWO POSSIBLE MEANINGS:
 "1. THE LEGISLATURE INTENDED THAT RACETRACKS ONLY BE RESPONSIBLE FOR 60% OF THE COMPENSATION OF THE INVOLVED RACING OFFICIALS, OR
 2. THE LEGISLATURE INTENDED THAT RACETRACKS NOT BE RESPONSIBLE FOR COMPENSATING LICENSE CLERKS (THEIR COMPENSATION HISTORICALLY HAVING CONSTITUTED APPROXIMATELY 40% OF THE EXPENDITURES NEEDED TO COMPENSATE COMMISSION TRACK EMPLOYEES.)
GIVEN THE FACT THAT THE LEGISLATURE, IN ENACTING THE PROVISIONS OF SECTION 60 OF CHAPTER 26 OF THE 1990 OKLAHOMA SESSION LAWS, DID NOT REPEAL OR AMEND THE PROVISIONS OF 3A O.S. 203.4, WHICH CLEARLY REQUIRES THAT THE RACETRACKS BE RESPONSIBLE FOR THE TOTAL COMPENSATION OF RACING OFFICIALS, AND GIVEN THE CONTEMPORANEOUS CIRCUMSTANCES NOTED ABOVE, I CONCLUDE THAT IT WAS THE INTENT OF THE LEGISLATURE THAT RACETRACKS CONTINUE TO BE RESPONSIBLE FOR 100% OF THE COMPENSATION OF ABOVE LISTED RACING OFFICIALS.
FOR THE REASONS STATED ABOVE, IT IS MY OPINION THAT:
 1. IT IS THE PRESENT INTENTION OF THE LEGISLATURE THAT STEWARDS, OFFICIAL VETERINARIANS, HORSE IDENTIFIERS, TEST BARN ASSISTANTS, AND TEST BARN ESCORTS, OFFICIATING AT RACETRACKS, BE EMPLOYEES OF THE OKLAHOMA RACING COMMISSION, AND NOT EMPLOYEES OF THE RACETRACKS BEING REGULATED.
 2. IT IS THE PRESENT INTENTION OF THE LEGISLATURE THAT RACETRACKS BE RESPONSIBLE FOR 100% OF THE COMPENSATION OF STEWARDS, OFFICIAL VETERINARIANS, HORSE IDENTIFIES, TEST BARN ASSISTANTS, AND TEST BARN ESCORTS, OFFICIATING AT RACETRACKS.
(NEAL LEADER)